Wilfredo REYES, Plaintiff,

v.

Richard KOEHLER, Correction Commissioner; Mr. Poroullo, Correction Officer #4776, Defendants.

No. 87 CIV. 8695 (SS).

United States District Court,
S.D. New York.

Feb. 9, 1993.

---

**3.** Plaintiff does not seek an award of attorney's fees.

Wilfredo Reyes, pro se.

Herbert Lazar, Asst. Corp. Counsel, New York City, for defendants.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

SOTOMAYOR, District Judge.

This action has been reassigned to the Hon. Sonia Sotomayor. The Court has received and reviewed the Report and Recommendation issued by Magistrate Sharon E. Grubin on October 8, 1992. No timely objections to the Report and Recommendation have been made by the parties to this action. *Pro se* Plaintiff was advised of his obligation to file timely objections and of the consequences if he failed to do so. Moreover, Plaintiff was advised by Magistrate Grubin of his obligation to respond to the motion for summary judgment and of the consequences of his failure to do so. The Court finds the Report and Recommendation supported by the facts and law, and it is hereby

ORDERED THAT the Report and Recommendation issued by Magistrate Grubin on October 8, 1992 is adopted and accepted, and it is further

ORDERED THAT the Complaint be dismissed as against the only remaining defendant Mr. Paruolo.

SO ORDERED

1. Richard Koehler, the other defendant named in the complaint, was dismissed from the action by your Honor's "Order Accepting Magistrate's Re-

## REPORT AND RECOMMENDATION TO THE HONORABLE SHIRLEY WOHL KRAM

GRUBIN, United States Magistrate Judge:

On December 8, 1987, plaintiff Wilfredo Reyes, proceeding *pro se* and *in forma pauperis,* commenced this action pursuant to 42 U.S.C. § 1983. On February 14, 1992, defendant Anthony Paruolo moved for summary judgment.[1] On February 19, 1992, I advised plaintiff of the importance of responding to the motion and the consequences of a failure to rebut material evidence on a summary judgment motion. However, plaintiff has not responded to the motion. For the following reasons, I respectfully recommend that the motion be granted.

## BACKGROUND

For the purpose of this motion, I have construed all facts and drawn all inferences in favor of plaintiff. In July 1987, plaintiff was incarcerated in the Bronx House of Detention for Men ("BHD"), in the housing area or tier known as 2 South, and defendant Paruolo was a correction officer assigned to patrol the area known as the bridge. Affidavit of Anthony Paruolo, sworn to February 14, 1992 ("Paruolo Aff."), ¶¶ 2, 5. In his complaint, plaintiff alleges that (1) he was assaulted by two inmates named Peter White and Ronald Green, and "[t]here are reasons to believe" that Paruolo "knew about the attack before it took place, and did nothing to stop it"; (2) Paruolo himself assaulted plaintiff; and (3) the two inmates stole $10,000 worth of jewelry from him. The complaint does not set forth any additional details. Complaint ¶ IV. Plaintiff alleges that he sustained various physical injuries and seeks damages of $1.3 million. *Id.* ¶¶ IV-A, V.

At his deposition on July 22, 1988, plaintiff expanded upon these allegations. The assault by White and Green occurred in the 2 South dayroom on July 9, 1987 at approximately 10:30 p.m. Plaintiff testified, "I believe Paruolo paid these two guys to come and beat me up." Transcript of Deposition of Wilfredo Reyes ("Dep"), 59.[2] Paruolo "got

port and Recommendation" of December 30, 1988.

2. The deposition transcript is attached as Exhibit C to the Affidavit of Assistant Corporation Coun-

[plaintiff] fired" from his BHD job as a "feeder" about 10 days before the incident, and another officer told plaintiff that Paruolo "had it in" for him. Dep 14–15, see 27–28. After White began fighting with plaintiff, Green ran to the dayroom area and punched plaintiff, breaking his nose and knocking him flat on his back. "I hit the ground and cracked my head. While I was knocked out on the floor, between the both of them, kicked me about 20 times in the face." Dep 13, 17, 19. According to plaintiff, two inmates told him that before the fight they heard Paruolo tell Green, "You better go into the dayroom because the Puerto Ricans are about to beat up your friend." Dep 19, 26, 54–55, 59.

With respect to Paruolo's alleged assault on plaintiff, plaintiff testified that, after the fight, he was taken to the officers' office on the bridge for questioning by Captain Small and Deputy Warden Jiles, as Paruolo and Officer Bridges stood at the door. Plaintiff told Small and Jiles that he believed Paruolo was in some way responsible for the incident. Small and Jiles then left the office, and Bridges accompanied plaintiff to the officers' toilet. While there, he heard Paruolo say to Bridges, "Did you hear what that blank guy said?" When plaintiff left the toilet, plaintiff "tried to explain the situation" to Paruolo, who cursed and "pushed me against the wall, full force. Causing my head to hit an iron wall.... Then I was taken up to the clinic." Plaintiff testified, "I believe [the push] worsened my head injury." Dep 23–24, 29–31, 68.

With respect to the alleged theft, plaintiff testified that at the clinic he became aware that his jewelry was missing from his pocket and told this to Captain Small; that Paruolo told plaintiff that he would look for it and later reported that he couldn't find it; that one inmate told plaintiff he saw White take the jewelry from the dayroom floor; and that another inmate told plaintiff he saw Paruolo search White and Green for the jewelry. From all this, plaintiff deduces that Paruolo "let them keep my jewelry." Dep 36–38, 42, 59–62.

In an affidavit submitted in support of his motion, Paruolo denies plaintiff's allegations

sel Herbert Lazar, Esq., sworn to February 14,

in all pertinent respects. With respect to plaintiff's fight with White and Green, Paruolo states that on July 9, 1987, as the officer assigned to patrol the bridge area, he had been in the officers' office since 10:30 p.m. preparing paperwork for the daily 11:00 p.m. inmate count, when, at approximately 10:55 p.m., the officer responsible for patrolling the halls yelled to him from the dayroom about an altercation, and Paruolo ran to the scene. When he arrived the altercation between plaintiff, White and Green had ended and the three inmates had been separated. Paruolo Aff. ¶¶ 4–7; see Lazar Aff. Ex. D. "I was not near and could not see the scene of the incident, nor was I in any way involved in the altercation, nor was I involved in any incidents that led to it, or occurred before I arrived or after the combatants had been separated...." Paruolo Aff. ¶ 8. Paruolo denies having had any feelings against plaintiff, paying White and Green to fight plaintiff, knowing about the fight in advance, or doing anything to provoke or cause it. Id. ¶¶ 12, 14.

With respect to plaintiff's allegation that Paruolo pushed him, Paruolo states, "I never pushed plaintiff against a wall on the bridge. I did not escort plaintiff from the dayroom where the altercation took place. In fact, plaintiff was immediately escorted from the scene of the altercation directly to the medical clinic room by Captain Small. Thus, I never even had contact with the plaintiff on the bridge." Id. ¶ 15.

With respect to the alleged jewelry theft, Paruolo states, "I did not permit any inmates to take plaintiff's jewelry. In fact, I did not search inmates White and Green for the jewelry as alleged by plaintiff. I never went to the receiving room where the search allegedly took place." Id. ¶ 13.

### DISCUSSION

*Summary Judgment Standards*

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interroga-

1992 ("Lazar Aff.").

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion," *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), and extend extra consideration to a *pro se* plaintiff who is to be given "special latitude on summary judgment motions," *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986). *See also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50, 106 S.Ct. at 2511; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088,

107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.,* 804 F.2d at 11–12. Once the non-moving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1989).

### Plaintiff's Claims

In order to state a claim in federal court under 42 U.S.C. § 1983, a federal constitutional or statutory provision must be implicated. The only reference in plaintiff's complaint to any federal constitutional or statutory provision is in its pre-printed title: "Form To Be Used by Prisoners in Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983." Mindful of our duty, however, to construe *pro se* actions liberally, *see Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594,

595, 30 L.Ed.2d 652 (1972) (per curiam); *Salahuddin v. Coughlin*, 781 F.2d 24, 28–29 (2d Cir.1986), we have analyzed the case under all possible constitutional theories that it may be seen possibly to invoke, also taking into account plaintiff's deposition testimony. We find the complaint may be read to attempt to establish three claims against Paruolo: (1) that his alleged responsibility (whether by commission or omission) for plaintiff's beating by the two inmates constituted deliberate indifference to plaintiff's safety in violation of the Eighth Amendment; (2) that he used excessive force in violation of the Eighth Amendment by shoving plaintiff at the bridge; and (3) that he deprived plaintiff of his property without due process of law in violation of the Fourteenth Amendment by permitting his property to be stolen.

*Claim 1*

With respect to plaintiff's allegation that Paruolo instigated the altercation by paying White and Green to attack him, he offers no basis to support it apart from his own "belief." He admitted at his deposition that he has no witnesses to any such payment. This allegation is wholly rebutted by Paruolo's denial, in the face of which plaintiff has stood mute, and must therefore be dismissed.

Plaintiff's allegation that Paruolo knew the altercation was about to take place and did nothing to stop it is supported solely by his hearsay testimony at his deposition that two inmates told him the day after the incident that they heard Paruolo tell Green before the fight that he had "better go into the dayroom because the Puerto Ricans are about to beat up your friend." Although plaintiff submitted nothing to rebut Paruolo's denial of such statement or any advanced knowledge of the altercation, despite having been fully advised by me that he had a right to respond to Paruolo's papers and that if he failed to do so judgment dismissing his case might be granted, given his *pro se* status I gave him a further opportunity to prevent the grant of Paruolo's motion for summary judgment by issuing an Order providing as follows:

On February 18, 1992 defendant Paruolo filed a motion for summary judgment in this case. By sworn affidavit, he denied plaintiff's claims against him in their entirety. On February 19, 1992 I sent a letter to plaintiff advising him that if he failed to respond to the motion with factual evidence to show an issue of fact for trial, his case could be dismissed. Plaintiff, however, made no submission.

Having now reviewed and considered all aspects of the motion, I find summary judgment must be granted unless plaintiff can provide competent, admissible evidence to support his allegation that he was told by two inmates that they heard Paruolo inform Ronald Green about the altercation that was to take place. In this regard, plaintiff stated at his deposition that Mitchell Banneman and Alfredo Ramirez told him that Paruolo told Green, "You better go into the dayroom because the Puerto Ricans are about to beat up your friend."

Plaintiff is hereby advised that, because hearsay evidence is not admissible on a summary judgment motion any more than at trial, see Fed.R.Civ.P. 56(e); *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n. 9 (2d Cir.1980); *First City Federal Savings Bank v. Bhogaonker*, 684 F.Supp. 793, 798 (S.D.N.Y.1988); *Ronald Litoff, Ltd. v. American Express Co.*, 621 F.Supp. 981, 984 (S.D.N.Y.1985), in order to rebut Paruolo's denial of the alleged statement, plaintiff must provide sworn affidavits or deposition testimony from one or both of these other inmates about what they allegedly heard Paruolo say (or other competent probative evidence on the issue). Plaintiff's own statement that they told him they heard Paruolo make the statement is inadmissible.

Plaintiff shall have thirty (30) days from the date hereof to provide such evidence. If none is submitted by that time, summary judgment shall be granted. If plaintiff has any questions about how to proceed, he should contact the court's *Pro Se* Office for advice.

Despite this Order, plaintiff has made no submissions nor contacted in any way the court or the *Pro Se* Office. Accordingly, summary judgment should be granted on this claim.

*Claim 2*

█ Plaintiff's claim based on Paruolo's alleged act of pushing him into a wall after the altercation must also be dismissed. To sustain a constitutional claim in this regard, the allegations must be such as to set forth a violation of the Eighth Amendment's cruel and unusual punishment prohibition by having used excessive force to impose an "unnecessary and wanton infliction of pain." *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Ingraham v. Wright,* 430 U.S. 651, 664–69, 97 S.Ct. 1401, 1408–12, 51 L.Ed.2d 711 (1977). "Whenever prison officials stand accused of using excessive physical force ... the core judicial inquiry is that set forth in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* —— U.S. ——, 112 S.Ct. at 999; *see id.* at ——, 112 S.Ct. at 998; *Whitley v. Albers,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Defendant denies plaintiff's allegation that he shoved plaintiff against a wall, thereby "worsening" his head injury, but even when we accept plaintiff's account as true for the purpose of this motion, it is insufficient to sustain a claim. As the late Judge Friendly stated in *Johnson v. Glick:*

> Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it; still less is it as extensive as that afforded by the common law tort action for assault, redressing "[a]ny act of such a nature as to excite an apprehension of battery".... Not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

481 F.2d at 1033 (citations omitted).[3] Defendant's pushing plaintiff against a wall, as described by plaintiff, was a momentary act, "of such a limited duration as to belie any inference of malicious or sadistic intent to cause harm." *Mathis v. Lewis,* No. 84 Civ. 4919 (RWS), 1986 WL 6005 at *2 (S.D.N.Y. May 19, 1986) (available without citation on Lexis). Plaintiff does not even allege malice or intent to cause harm by Paruolo. The act complained of, thus, does not "evince[ ] such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur" or reflect a "sufficiently culpable state of mind" to support an Eighth Amendment claim. *Hudson v. McMillian,* —— U.S. at ——, 112 S.Ct. at 999 (quotations omitted). *See also Candelaria v. Coughlin,* 787 F.Supp. 368, 374–75 (S.D.N.Y.1992) (under *Hudson v. McMillian,* Eighth Amendment claim dismissed where plaintiff alleged correction officer "pushed his fist against my neck so that I couldn't move and I was losing my breath because of the pressure.")

*Claim 3*

█ Plaintiff's final claim, that White and Green stole his jewelry and that Paruolo "let them keep" it, also must be dismissed. First, plaintiff has submitted nothing to rebut Paruolo's affidavit denials. Moreover, plaintiff fails to set forth a cognizable constitutional claim. Under *Hudson v. Palmer,* 468 U.S. 517, 536, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984), even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate postdeprivation remedy. *See also Blum v. Koch,* 716 F.Supp. 754, 762 (S.D.N.Y.1989); *Friedman v. Young,* 702 F.Supp. 433, 437 (S.D.N.Y.1988); *DeYoung v. City of New York,* 607 F.Supp. 1040, 1042–43 (S.D.N.Y.1985). As New York provides such

---

3. That the analysis in *Johnson v. Glick* is still to be used in the Eighth Amendment context was confirmed in *Graham v. Connor,* 490 U.S. 386, 398 n. 11, 109 S.Ct. 1865, 1873 n. 11, 104 L.Ed.2d 443 (1989); *see also Hudson v. McMillian,* —— U.S. at ——, 112 S.Ct. at 998–1000; *Anderson v. Sullivan,* 702 F.Supp. 424, 426 n. 2 (S.D.N.Y.1988).

a remedy in § 9 of the Court of Claims Act, plaintiff states no constitutional claim herein.

## CONCLUSION

For the above reasons, I respectfully recommend that your Honor grant defendant's motion for summary judgment and dismiss this action.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Shirley Wohl Kram, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Kram. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983) (per curiam). *See generally* Fed.R.Civ.P. 6(a), 6(e).