**Glenn MORRIS, Plaintiff,**

v.

**AMALGAMATED LITHOGRAPHERS OF AMERICA, LOCAL ONE, Defendant.**

**No. 96 Civ. 5329(LAK).**

United States District Court, S.D. New York.

Jan. 9, 1998.

Glenn Morris, Jersey City, NJ, pro se.

Ira Cure, Kennedy Schwartz & Cure, New York City, for defendant.

## ORDER

KAPLAN, District Judge.

Plaintiff brought this action against defendant Amalgamated Lithographers of America, Local One, for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Defendant has moved for summary judgment dismissing the complaint.

In a report dated December 19, 1997, Magistrate Judge Andrew J. Peck recommended that defendant's motion be granted in part and denied in part. He concluded that the retaliation claim is time barred and that plaintiff's claim that the union violated Executive order 11246 fails to state a claim upon which relief may be granted. On the other hand, he recommended denial of so much of the motion as sought dismissal of the contention that the union had violated Title VII by failing fairly and, adequately to represent plaintiff in his most recent grievance against his employer. It was the Magistrate Judge's view that there was little evidence as to the extent of the union's efforts on plaintiff's behalf and that summary judgment on that claim therefore would be inappropriate. The union has objected to so much of the Magistrate Judge's report as recommends denial of this aspect of its motion.

■ The first issue presented by the objections is whether the Court should consider the extensive affidavits and evidentiary materials the union has submitted in support of its objections. In this connection, it should be noted that the union's application before Judge Peck for leave to submit affidavits in support of a motion for reconsideration was denied on the ground that "any additional evidence is for trial, not a 2d bite at the apple." (Endorsement, Jan. 5, 1998).

Section 636(b)(1)(C) of the Judicial Code, 28 U.S.C. § 636(b)(1)(C), which provides for district court reviews of reports and recommendations by magistrate judges provides in Part that "[t]he judge *may* also receive further evidence ..." in the course of such a review. (Emphasis added) But the statute is permissive, not mandatory. While there may be cases in which the receipt of further evidence is appropriate, there are substantial reasons for declining to do so as a general matter. First, permitting such piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record. Second,

opposing parties would be put to the burden of proceedings which, to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate judge on a more abbreviated showing. Finally, the routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.

In this case, the defendant was well aware that its burden under Fed.R.Civ.P. 56 was to demonstrate that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. In view of the plaintiff's claim that the union failed to represent him fairly and adequately in the grievance proceeding, the union was on notice that the details of exactly what it did and when—which is the focus of the evidentiary materials it now seeks to submit—necessarily were at the heart of its motion for summary judgment. It has offered no excuse whatever for failing to offer them in its initial papers. The Court therefore declines to consider them. Judge Peck was entirely correct in declining to afford the union a second bite at the apple.

As far as the merits of the union's objections are concerned, the Court has reviewed the entire record on the motion *de novo*. While there is a substantial basis for the union's position, it is far from clear that no reasonable trier of fact could find that the union was less than diligent in pursuing plaintiff's claim. That would be true, moreover, irrespective of whether the belated materials that the Court has excluded were considered in support of the objections.

Accordingly, the defendant's objections to the report and recommendation of Magistrate Judge Peck, dated December 19, 1997, are overruled. Insofar as the defendant seeks summary judgment dismissing plaintiff's claim that the union violated Title VII by failing adequately to pursue plaintiff's recent grievance, the motion is denied.

It should be noted that this does not fully dispose of the defendant's motion. The time for plaintiff to object to so much of the report as recommended dismissal of his retaliation and Executive Order 11246 claims has not yet expired. In consequence, the Court defers ruling on that aspect of the motion.

SO ORDERED.

## ORDER

February 4, 1998

This is a Title VII action in which the plaintiff, an African American, complains of racial discrimination by the union of which he is a member, essentially by failing properly to represent his interests in grievances he brought against his employer.

In a report and recommendation dated December 19, 1997, Magistrate Judge Peck recommended that the union's motion for summary judgment dismissing the complaint be granted insofar as Morris complained of the union having disciplined him in 1994 and sought relief under Executive Order 11246, but otherwise be denied. The union objected to so much of the recommendation as indicated that portions of its motion should be denied, but the Court previously overruled those objections. Remaining before the Court is plaintiff's objection to so much of the report as recommended the dismissal as untimely of the claim that the 1994 union discipline violated Title VII.

At the outset, it must be noted that the 1994 incident that is the subject of plaintiff's objections antedates all of the conduct referred to in the complaint and in plaintiff's EEOC charge. While the incident was mentioned in plaintiff's papers in opposition to defendant's motion for summary judgment (Morris Aff. ¶¶ 14–15; Pl.Br. at 7), its apparent relevance was as an illustration of the alleged animus of the union against him. No claim for relief based on that incident ever has been properly interposed in this action. Judge Peck bent over backward in plaintiff's favor by construing his discursive, poorly organized, and difficult to follow papers in treating such a claim as having been made. At this late date in the action, neither the Magistrate Judge nor the Court is obliged to do so.

Even assuming that the issue were properly before the Court, Judge Peck would have been right in concluding that any claim for relief based on this incident is time barred. Plaintiff concedes that the incident occurred more than 300 days before the filing of plaintiff's EEOC charge and therefore is time barred, While plaintiff now argues that the incident is a proper subject of relief in view of the continuing violations doctrine, no such contention was made before the Magistrate Judge. Even assuming that the incident had been an alleged basis for relief from the outset, it would be inappropriate to permit plaintiff to raise the continuing violation theory for the first time via objections to the Magistrate Judge's report and recommendation.

■ Even more basically, plaintiff's reliance on the continuing violation theory is misplaced. As this Court explained in *Johnson v. Nyack Hospital*, 891 F.Supp. 155 (S.D.N.Y.1995), *aff'd on other grounds*, 86 F.3d 8 (2d Cir.1996), the doctrine renders timely claims based on otherwise stale acts only if (1) the acts "within and without the limitations period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory employment practice chargeable to the employer," and (2) "the circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier." *Id.* at 165.[1] Assum-

---

1. The Court of Appeal's recent decision in *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996), reaffirmed that the continuing violation doctrine will apply only:

" 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (quoting *Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir.1993)).

*Van Zant* does not speak to the second requirement in *Johnson*, which is drawn from the Fifth Circuit's decision in *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir.1983), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). Although the Second Circuit has never specifically considered its validity, the *Berry* test has had a profound influence on other federal courts. *See West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 n. 9 (3d

ing *arguendo* that there is sufficient evidence to raise a genuine issue of fact as to whether the first prong of the test is met, the second nevertheless is not.

 As plaintiff's affidavit in opposition to the motion for summary judgment indicates, "[t]he Union's [alleged] failure to provide fair representation to me as an Afro–American dates back at least to ... 1981." (Morris Aff. ¶ 8) He complained of the union's alleged failure properly to represent him with respect to an April 1992 grievance. (*Id.* ¶¶ 12–13) Immediately upon being notified of the union's action in the 1994 incident, plaintiff complained in writing. (*Id.* ¶ 15) Indeed, he filed an unfair labor practice charge against the union under Section 8 of the National Labor Relations Act, a charge that the NLRB found was unsupported by sufficient evidence. (*Id.* Ex. R)

In these circumstances, plaintiff quite clearly could and should have made the March 1994 incident a subject of his EEOC complaint. His failure to do so therefore cannot be excused on the basis of the continuing violation doctrine. This ruling of course does not determine, one way or the other, whether the alleged March 1994 incident will be admissible at trial to show, for example, intent or some other relevant, disputed fact, as distinguished from being a subject as to which relief might be granted.

In sum, plaintiff's objections to the report and recommendation are overruled. The defendant's motion for summary judgment is granted insofar as it seeks dismissal of any claims based on the union's March 1994 imposition of sanctions on plaintiff and for violation of the executive order. The other aspects of defendant's motion were disposed of by order dated January 9, 1998.

SO ORDERED.

Cir.1995) (adopting *Berry* test); *Mascheroni v. Board of Regents of the University of California,* 28 F.3d 1554, 1561 (10th Cir.1994) (same); *Selan v. Kiley,* 969 F.2d 560, 565–66 & n. 7 (7th Cir.1992) (same); *Sabree v. United Brotherhood of Carpenters and Joiners,* 921 F.2d 396, 404 (1st Cir.1990) (same); *Roberts v. Gadsden Mem. Hosp.,* 835 F.2d 793, 800 (11th Cir.1988) (same); *Dixit v. City of New York Dept. of General Serv.,* 972 F.Supp. 730, 736 (S.D.N.Y.1997) (same); *Al-*

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Plaintiff Glenn Morris alleges that defendant Amalgamated Lithographers of America, Local One ("Local One" or the "Union") discriminated and retaliated against him on the basis of race in violation of Title VII. Local One has moved for summary judgment. For the reasons set forth below, I recommend that Local One's summary judgment motion be granted in part and denied in part. Specifically, Local One should be granted summary judgment on Morris' claim that the Union (1) disciplined him in 1994 in retaliation, since that claim is time barred, and (2) violated Executive Order 11246, since there is no private right of action under that Executive Order. Local One's summary judgment motion on Morris' Title VII duty of fair representation claim should be denied because there are material issues of fact as to whether the Union adequately pursued Morris discrimination claim against Morris' employer, Scott Press.

### FACTS

Local One is a labor union for lithographic production employees. (Local One 56.1 Stmt. ¶ 1; Morris 56.1 Stmt. ¶ 1; Lichten Aff.Ex. A at 1.) Plaintiff Morris, an African–American male, is a member of the Union. (Local One 56.1 Stmt. ¶¶ 2–3, 9; Morris 56.1 Stmt. ¶¶ 2–3, 9; Morris Aff. ¶ 2.)

Local One entered into collective bargaining agreements (the "Agreements") with the Metropolitan Lithographers Association, Inc., an association of lithographic printing firms. (Local One 56.1 Stmt. ¶ 4; Morris 56.1 Stmt. ¶ 4; Lichten Aff.Ex. A; Morris Aff. ¶ 2.) The Agreements provide for a grievance resolution process that involves submission of the grievance initially to a Joint Committee of

*britton v. Kantor,* 944 F.Supp. 966, 971 (D.D.C. 1996) (same); *Detrick v. H & E Machinery, Inc.,* 934 F.Supp. 63, 67 (S.D.N.Y.1996) (same); *Rivera v. Puerto Rican Home Attendants Services, Inc.,* 930 F.Supp. 124, 130 (S.D.N.Y.1996) (same). Given the weight of authority in *Berry's* support, this Court will continue to apply *Johnson* absent persuasive or binding authority to the contrary.

the Union and the Association, and ultimately to binding arbitration if the Joint Committee fails to resolve the dispute. (Local One 56.1 Stmt. ¶¶ 4–6; Morris 56.1 Stmt. ¶¶ 4–6; Lichten Aff.Ex. A at 24–25.)

In January 1993, Morris began his employment at Scott Press, Inc., a member of the Association. (Local One 56.1 Stmt. ¶ 15; Morris 56.1 Stmt. ¶ 15; Lichten Aff.Ex. O: Morris Dep. At 18; Morris Aff. ¶ 7(g).) In September or October 1994, Scott demoted Morris from first operator to second operator. (Local One 56.1 Stmt. ¶ 16; Morris 56.1 Stmt. ¶ 16; Morris Dep. at 20–21; Morris Aff. ¶ 16.) Morris alleges that Scott demoted him and disciplined him because of his race, in violation of the Agreement's non-discrimination clause. (Local One 56.1 Stmt. ¶ 17; Morris 56.1 Stmt. ¶ 17; Morris Aff. ¶ 16; Lichten Aff.Ex. A at 3.)

Morris contends that Local One failed to present his grievance against Scott for an extended period of time. (Morris Resp. ¶ 18.) On March 3, 1995 and May 1, 1995, Morris filed charges against the Union with the Equal Employment Opportunity Commission ("EEOC"), alleging that Local One "suppressed" its actions on his behalf against Scott and that the Union discriminated against him based on his race and retaliated against him in violation of Title VII. (Morris Aff. ¶ 19 & Exs. E & F.) Morris asserts that Local One only acted on his grievance against Scott after he filed his EEOC charges. (Morris Aff. ¶ 19.)

On May 3, 1995, Union Vice President Joseph Curto wrote to Scott, "to advise [Scott] that Local One has received serious allegations of racial harassment at the work place . . . [and] intends to vigorously investigate these charges." (Local One 56.1 Stmt. ¶ 18; Lichten Aff.Ex. D.) Morris did not see this letter until this lawsuit. (Morris Aff. ¶ 18; Morris 56.1 Stmt. ¶ 18.) On May 12, 1995, the Union's attorney, Ira Cure, wrote to Morris and four other Scott employees, asking them to contact him to assist in the investigation. (Local One 56.1 Stmt. ¶¶ 19–20; Lichten Aff.Exs. E–F.)

On July 7, 1995, pursuant to the Agreements' dispute resolution process, Local One

wrote to Scott requesting that a Joint Committee be formed to hear Morris' grievance against Scott. (Local One 56.1 Stmt. ¶ 25; Morris 56.1 Stmt. ¶ 25; Lichten Aff.Ex. G.) After the Joint Committee failed to resolve the dispute, the Union submitted the matter to arbitration in August–September 1995; an arbitration hearing was scheduled for April 29, 1996. (Local One 56.1 Stmt. ¶¶ 26–29; Morris 56.1 Stmt. ¶¶ 26–29; Lichten Aff.Exs. H–J; Morris Dep. at 50.)

On or about March 22, 1996, Morris received a right to sue letter from the EEOC. (Lichten Aff.Ex. B: Ex. to Cplt.)

On April 23, 1996, Morris delivered a letter to Local One's counsel stating that he "no longer wish[ed] to proceed with arbitration at this point." (Local One 56.1 Stmt. ¶ 32; Morris 56.1 Stmt. ¶ 32; Lichten Aff.Ex. K.) Morris' letter alleged that "it is becoming more apparent that it is the Union's lawyers intention to make minuscule, if not totally negate the discriminatory factors in our grievances." (Lichten Aff.Ex. K.) Morris wrote that he hoped that his withdrawal would "highlight the Union's conflict of interest . . . when it comes to minorities." (*Id.*) As a result of Morris' letter, the Union cancelled the arbitration hearing. (Local One 56.1 Stmt. ¶ 33; Lichten Aff.Ex. L.)

On or about June 19, 1996, Morris filed this Title VII action against Local One. (*See* Cplt.)

Local One has moved for summary judgment, arguing that it "zealously represented Morris throughout the grievance process, and . . . took no adverse employment action against Morris." (Local One Br. at 1–2.) Local One claims that it was prepared to argue Morris' discrimination claim at the arbitration hearing, had Morris not withdrawn from the arbitration. (*E.g.,* Local One Br. at 1.) To support its contentions, Local One points to two previous occasions when it represented Morris on discrimination charges against his former employers, Pace DeTorres and Lasky Company. (Local One 56.1 Stmt. ¶¶ 8, 10, 13–14; Morris 56.1 Stmt. ¶¶ 8, 10, 13–14; Morris Dep. at 6–7, 141–42, 145, 147; Lichten Aff.Ex. C.) However, both arbitrations ruled against Morris. (Morris Aff. ¶¶ 8,

12; Morris Dep. at 147.) Finally, Local One has presented evidence that it pursued discrimination claims against Scott on behalf of two other employees (Summerville and Ruiz) at arbitration hearings at which Morris was called as a witness. (Local One 56.1 Stmt. ¶¶ 34–35; Morris 56.1 Stmt. ¶¶ 34–35; Lichten Aff.Exs. M, N; Morris Dep. at 7–8, 57.)

Although Morris does not dispute that the Union arbitrated his claims against his previous employers and his fellow employees, grievances against Scott, Morris alleges that Local One failed to provide evidence of racial discrimination at these proceedings. (Morris 56.1 Stmt. ¶¶ 10, 13–14, 34–35, 40–43, 51, 53; Morris Aff. ¶¶ 12–13, 18, 23–24.)

Morris also alleges that Local One retaliated against him for his activism and criticism of the Union by imposing sanctions against him. (E.g., Morris Aff. ¶¶ 14–15.) In March 1994, Morris complained to Scott management that his shift was understaffed. In the same letter, Morris criticized a fellow union member as a "no-show, no-help invisible man," and described another union worker as an "inexperienced" operator, "not used to working under this type of pressure." (Morris Aff.Ex. S; Morris Aff. ¶ 14.) At a Grievance Committee meeting, Local One found Morris in violation of several Union by-laws, including rules requiring that "[d]ifferences between members shall not be discussed with management," and fined Morris $200. (Morris Aff. ¶ 15; Morris Aff .Ex. M; Morris 56.1 Stmt. ¶¶ 43–44.) [1]

Morris charges Local One with complicity "with [Scott] in establishing an affirmative action program for white males." (Cplt.¶ 8.) Morris alleges that Local One failed to prevent Scott from by-passing Union rules in the rehiring of white male operators. (Morris Aff. ¶ 17.) Finally, Morris asserts that Local One failed to enforce Executive Order 11246, which requires, inter alia, contractors and subcontractors who perform under government contracts to develop affirmative action programs. (Morris Aff. ¶ 25.)

---

1. Morris failed to cite this incident in his charges filed with the EEOC. (Morris Aff.Exs. E, F.) He did, however, file a complaint against Local One with the National Labor Relations Board

## ANALYSIS

### I. THE SUMMARY JUDGEMENT STANDARD IN EMPLOYMENT DISCRIMINATION CASES

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991); Hernandez v. New York City Law Dep't Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); Burger v. Litton Indus., Inc., 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y.April 25, 1996) (Peck, M.J.), report & rec. adopted, 1996 WL 609421 (S.D.N.Y. Oct.22, 1996). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, Local One. E.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d Cir.1994) Gallo v. Prudential Residential Services, Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994); Hernandez v. New York City Law Dep't, 1997 WL 27047 at *6; Burger v. Litton, 1996 WL 421449 at *7.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255, 106 S.Ct. at 2513; Chambers v. TRM, 43 F.3d at 36; Gallo v. Prudential, 22 F.3d at 1223; Hernandez v. New York City Law

---

("NLRB") on December 5, 1994. (Morris Aff.Ex. Q.) The NLRB dismissed the charge because it was an "internal union matter." (Morris Aff.Ex. R.)

*Dep't,* 1997 WL 27047 at *7. The Court draws all inferences in favor of the nonmoving party—here, Morris—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7; *Burger v. Litton,* 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Watson v. McGinnis,* 981 F.Supp. 815, 817–18 (S.D.N.Y.1997) (Peck, M.J.); *Ruiz v. Selsky,* 1997 WL 137448 at *3, 96 Civ.2003 (S.D.N.Y. March 24, 1997). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment [,] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see also, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11–12; *Watson v. McGinnis,* 981 F.Supp. 815, 817–18; *Shaw v. City of New York,* 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Ruiz v. Selsky,* 1997 WL 137448 at *3.[2]

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential,* 22 F.3d at 1224; *see also, e.g., Chambers v. TRM,* 43 F.3d at 40; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7. Because the employer (here, the Union) rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the defendant's explanations for its actions. *E.g., Gallo v. Prudential,* 22 F.3d at 1224; *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990); *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7. Nonetheless, when the defendant provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the defendant. *See, e.g., Stern v. Trustees of Columbia Univ.,* 131 F.3d 305 (2d Cir.1997); *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995); *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7; *Burger v. Litton,* 1996 WL 421449 at *7; *Engelmann v. National Broadcasting Co.,* 1996 WL 76107 at *7, 94 Civ. 5616 (S.D.N.Y. Feb.22, 1996). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ.; see also, Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.) (en banc), *petition for cert. filed,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (plaintiff

---

2. The Court also recognizes that it must "extend extra consideration" to pro se plaintiffs such as Morris; pro se parties are "to be given 'special latitude on summary judgment motions.' " *Reyes v. Koehler,* 815 F.Supp. 109, 112 (S.D.N.Y. 1993) (quoting *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986)); *see also, e.g., Watson v. McGinnis,* 981 F.Supp. 815, 818–19; *Valentine v. Honsinger,* 894 F.Supp. 154, 156 (S.D.N.Y. 1995); *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.1992). The Court notes that Morris began this action pro se and is currently pro se; he was represented by counsel during part of this action, but fired counsel after counsel's submission of papers opposing the summary judgment motion.

must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons. proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.' "); *Feinson v. New School for Soc. Research*, 1997 WL 742532 at *8, 95 Civ. 763 (S.D.N.Y. Dec.1, 1997) ("plaintiff must ... carry the ultimate burden of persuasion, by demonstrating by a preponderance of the evidence that improper discrimination was a determinative factor motivating the employer's conduct"); *Richardson v. Newburgh Enlarged City School Dist.*, 984 F.Supp. 735, 742 (S.D.N.Y.1997); *Cutler v. Parfums Givenchy, Inc*, 96 Civ. 9070, 1997 WL 634171 at *2–3 (S.D.N.Y. Oct.15, 1997) (Kaplan, D.J.); *Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *7; *Scaria v. Rubin*, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), *aff'd*, 117 F.3d 652, 654 (2d Cir.1997).

## II. *THE UNION'S LIABILITY UNDER TITLE VII*

The Court reads Morris' complaint to state three claims against Local One: (1) the Union breached its duty of fair representation by failing to properly process his discrimination claims against Scott and by acquiescing in Scott's allegedly discriminatory conduct; (2) the Union retaliated against him by imposing sanctions against him in 1994; and (3) the Union failed to enforce Executive Order 11246. (Cplt. ¶ 8; Morris Aff., Ex. B ¶¶ 13–14, 17–18 & 25.)

### A. *A Union's Breach of Its Duty of Fair Representation Can Render It Liable Under Title VII*

■ It is well established that "a union's breach of its duty of fair representation may render it liable under [Title VII] ...." *Morpurgo v. Board of Higher Educ.*, 423 F.Supp. 704, 717 (S.D.N.Y.1976) (citing *Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, 988–89 (D.C.Cir.1973), and *Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers v. NLRB*, 368 F.2d 12, 24 (5th Cir. 1966), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967)); *see also, e.g., Gavenda*

*v. Orleans County*, 95–CV–0251, 1997 WL 65870 at *5 (W.D.N.Y. Feb.10, 1997); *Doolittle v. Ruffo*, 88–CV–1175, 1996 WL 159850 at *3–4 (N.D.N.Y. March 27, 1996); *Ross v. Communication Workers, Local 110*, 91 Civ. 6367, 1995 WL 351462 at *5–6 (S.D.N.Y. June 9, 1995) (where union's breach of its duty of fair representation "allegedly was motivated by discriminatory reasons based on reasons of race or gender, such a claim may be brought under Title VII."), *aff'd mem.*, 100 F.3d 944 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 108, 136 L.Ed.2d 61 (1996); *Tabois v. CWA Local 1101*, 1992 WL 131038 at *4 (S.D.N.Y. June 1, 1992) ("Because plaintiff's Title VII claim is based on defendant's alleged violation of its duty of fair representation, 'a finding of a dfr [duty of fair representation] breach [is] essential to the existence of the Title VII claim.' "); *Shaw v. General Motors Corp.*, 81–CV–143, 1991 WL 155581 at *4 (W.D.N.Y. Aug.5, 1991); *Dolittle v. Ruffo*, 88–CV–1175, 1990 WL 2648 at *3 (N.D.N.Y. Jan.16, 1990) ("It is well settled that 'a union's breach of the duty of fair representation ... subjects it to liability under Title VII if the breach can be shown to be because of the complainant's race, religion, sex, or national origin.' "); *James v. Local 32B–32J, Serv. Employees Int'l Union*, 86 Civ. 0197, 1987 WL 33622 at *2 (S.D.N.Y. Dec.28, 1987) ("A union's role in ratifying an employer's discriminatory practice could be enough to compel a finding of union liability ... A union's breach of its duty of fair representation may also render it liable under Title VII.").

### B. *The Standard of Proof Applicable to a Title VII Breach of the Duty of Fair Representation Claim, and Its Application Here*

■ The parties' dispute the appropriate legal standard to be applied to Morris' Title VII claim. Local One points to the traditional Title VII standard enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and contends that Morris fails to establish any adverse employment action with respect to the Union. (Local One Br. at 5–7.) Morris, in contrast, relies on duty of fair representation cases generally, without citing to Title VII

duty of fair representation cases. (*See* Morris Br. at 8–15.)

After reviewing the case law in this and other circuits, the Court in *Doolittle v. Ruffo,* 88–CV–1175, 1996 WL 159850 at *4 (N.D.N.Y. March 27, 1996), announced a two-part test applicable to Title VII union duty of fair representation cases:

> Based upon the above-cited case law, this court concludes that in this circuit the first prong of the *Bugg* test is not necessary to plaintiffs' establishment of a prima facie case that the Union Defendants breached their duty of fair representation and thus violated Title VII. Instead, plaintiffs must satisfy a two-prong test. They must demonstrate (1) that the Union Defendants breached their duty of fair representation by allowing an alleged breach to go unrepaired and (2) that the Union Defendants' actions were motivated by gender animus.

*See also Gavenda v. Orleans County,* 95–CV–0251, 1997 WL 65870 at *5 (W.D.N.Y. Feb.10, 1997) ("the plaintiff must first establish a prima facie case of discrimination or retaliation, which requires her to show, inter alia, that she belongs to [a] protected group or—to demonstrate retaliation—was engaged in a protected activity, that she suffered an adverse union action—viz., that the union breached its duty of fair representation—and that such adverse action occurred under circumstances giving rise to a reasonable inference of [racial] or retaliatory animus.").

■ Applying that test here, it is undisputed that Morris is a member of a protected group—African–Americans—and that he engaged in a protected activity complaining of racial discrimination in employment including filing charges with the EEOC. Second, to demonstrate that the union breached its duty of fair representation, Morris must prove that Local One's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967);³ *accord, e.g., Gavenda v. Orleans County,* 1997 WL 65870 at *6; *Ross*

*v. Communication Workers,* 1995 WL 351462 at *5 ("the standards enunciated in *Vaca* concerning DFR [duty of fair representation] claims appl[y] to Title VII claims against a union as well"); *Tabois v. CWA Local 1101,* 1992 WL 131038 at *4.

The evidence before the Court about the Union's actual conduct in pursuing the Scott (and earlier) discrimination arbitrations is minimal, conclusory and contradictory. The Union contends that until Morris declined to go forward, the Union was prepared to pursue Morris' discrimination claim in arbitration, just as it had his prior discrimination claims against his former employers. (*E.g.,* Local One Br. at 1; Local One 56.1 Stmt. ¶¶ 8, 10, 13–14, 18–35.) Morris contends that the Union did not vigorously pursue his prior arbitrations and, based on his discussions with the Union's counsel leading up to his Scott arbitration, was not going to vigorously pursue his discrimination claim against Scott. (*E.g.,* Morris Dep. at 49–72, 141–52.) Moreover, Morris points out that the Union did not begin to pursue his discrimination claim against Scott for many months, and did so only after he filed charges with the EEOC. These factual disputes, and the lack of hard evidence from either side on this motion, preclude summary judgment.

Moreover, Morris need not prove that the Union itself held any racial animus against African–Americans. Its deliberate failure to pursue grievance claims of an employer's racial discrimination, if proved, is enough to establish the union's violation of Title VII. As the Supreme Court has made clear, " 'A union which intentionally avoids asserting discrimination claims ... is liable under ...' Title [VII] ..., regardless of whether, as a subjective matter, its leaders were favorably disposed towards minorities.' " *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 669, 107 S.Ct. 2617, 2625, 96 L.Ed.2d 572 (1987) (union found liable under Title VII for deliberately avoiding discrimination claims and for refusing to assert racial discrimination as a ground for grievances).⁴

---

3. While a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," its members do not have "an abso-

lute right to have [their] grievance[s] taken to arbitration...." *Id.* at 191, 87 S.Ct. at 917.

4. The Supreme Court in *Goodman* did not reach the issue of whether mere union passivity in the

### C. *Morris' Retaliation Claim Concerning The Union's Sanctions Against Him Is Time Barred*

Morris alleges that Local One imposed sanctions upon him in 1994 in retaliation for his activism and criticism of the Union. (Morris Aff.Ex. B ¶¶ 13–14, 18.) This claim, however, is time barred.

"Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII." *Chojar v. Levitt*, 773 F.Supp. 645, 650 (S.D.N.Y.1991) (citing 42 U.S.C. § 2000e–5(e), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973)); *accord, e.g., Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991); *Rivera v. Baccarat, Inc.*, 95 Civ. 9478, 1996 WL 251850 at *2 (S.D.N.Y. May 10, 1996); *Dortz v. City of New York*, 904 F.Supp. 127, 142 (S.D.N.Y.1995).

Acts of discrimination occurring more than 300 days before filing of charges with the EEOC are time barred. 42 U.S.C. § 2000e–5(e)(1); *see, e.g., Butts v. City of New York Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1401 ("When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred.... [T]he statute of limitations for filing a charge of discrimination with the EEOC is 300 days."); *Shull v. Rite Aid Corp.*, 94 Civ. 8552, 1997 WL 289460 at *4 (S.D.N.Y. May 30, 1997) (" '[T]he complainant has 300 days to file a complaint with the EEOC .... [and] failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court.' "); *Perezic v. Crespo*, 902 F.Supp. 438, 440 (S.D.N.Y.1995) (" '[T]he statute of limitations for filing a charge of discrimination with the EEOC is 300 days' after the alleged unlawful employment practice occurred.... Failure to comply with this timing requirement will cause a claim to be time barred.' "); *Carrasco v. New York City Off-Track Betting Corp.*, 858 F.Supp. 28, 31 (S.D.N.Y.1994), *aff'd mem.*, 50 F.3d 3 (2d Cir.1995). Morris' first EEOC complaint was brought on March 3, 1995. (Morris Aff. Ex. A.) The Union's imposition of $200 sanctions on Morris occurred on May 4, 1994. (Morris Aff. ¶ 15 & Ex. M; *see* Local One Reply Br. at 4.) May 4, 1994 is *303* days before March 3, 1995, and thus the claim as to the $200 sanctions is time barred.[5]

### D. *Morris' Claim That the Union Did Not Pursue Claims Against Employers Under Executive Order 11246 is Barred Because There is No Private Right of Action Under That Executive Order*

Morris charges the Union with failure to enforce Executive Order 11246. (Morris Aff. ¶¶ 25–26.) The Order mandates rules to promote "equal opportunity for all persons, without regard to race, color, religion, sex, or

---

face of an employer's discrimination renders the union liable under Title VII, because the record in *Goodman* showed more than mere passivity on the part of the union. 482 U.S. at 665–67, 107 S.Ct. at 2623–24.

Some courts appear to suggest that a union's acquiescence in the employer's discriminatory conduct is sufficient to state a Title VII claim. *See, e.g., Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, 989 (D.C.Cir.1973) ("[W]here there is such solid evidence of employer discrimination as is alleged here, it would undermine Title VII's attempt to impose responsibility on both unions and employers to hold that union passivity at the negotiating table in such circumstances cannot constitute a violation of the Act."); *United States v. Bethlehem Steel Corp.*, 312 F.Supp. 977, 990 (W.D.N.Y.1970) ("The notice of such discriminatory practices to [the union] placed upon [it] the duty to take whatever steps were lawful to alleviate the discrimination and the effects of such discrimination upon its Negro membership."), *rev'd in*

part on other grounds, 446 F.2d 652 (2d Cir. 1971). Here, some of Morris' claims may be of the passive variety, *e.g.*, his claim that the Union did not seek to enforce Executive Order 11246 mandating affirmative action programs by government contractors. However, because Morris' claim, as in *Goodman*, goes beyond "mere passivity" by the Union—*e.g.*, his claim that the Union did not vigorously pursue the discrimination arbitrations that it brought—the Court need not now address the issue left open by the Supreme Court in *Goodman* of whether mere passivity in the face of employer discrimination would make a union liable under Title VII.

5. The Court does not view Morris' allegations as to the Union's conduct of his two earlier arbitrations as purporting to state a claim, as opposed to evidence that the Union would not adequately pursue his Scott arbitration. Any Title VII claim as to those earlier arbitrations would be time barred.

national origin, employed or seeking employment with Government contractors or with contractors performing under federally assisted construction contracts." 41 C.F.R. § 60–1.1. It requires such employers to develop affirmative action programs. 41 C.F.R. § 60–2.1.

Enforcement of Executive Order 11246, however, is restricted to the Department of Labor; a private employment discrimination action can not be maintained under the Order. *E.g., Weise v. Syracuse Univ.*, 522 F.2d 397, 411 n. 23 (2d Cir.1975); *McPartland v. American Broad. Cos.*, 623 F.Supp. 1334, 1339–40 (S.D.N.Y.1985); *Pecorella v. Oak Orchard Community Health Ctr., Inc.*, 559 F.Supp. 147, 149 (W.D.N.Y.1982), *aff'd mem*, 722 F.2d 728 (2d Cir.1983). The Union, therefore, could not have pursued such a claim against employers. Accordingly, the Union should be granted summary judgment dismissing Morris' claim under Executive Order 11246.

### CONCLUSION

For the reasons set forth above, I recommend that defendant Local One's summary judgment motion be granted in part, dismissing plaintiff Morris' claim (1) of retaliation based on the Union's sanction against him in 1994, and (2) under Executive Order 11246. I further recommend that the Court in all other respects deny defendant Local One's summary judgment motion as to plaintiff's Title VII claims based on the Union's breach of its duty of fair representation.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### Preparation of the Pretrial Order

The parties are to file a joint pretrial order, in compliance with Judge Kaplan's rules for preparation of the pretrial order, by *February 18, 1998*. Because plaintiff is (once again) pro se, defendant's counsel shall be responsible for coordinating and filing the pretrial order. To assure the orderly preparation of the pretrial order, the parties are to exchange drafts of their portions of the pretrial order as follows: defendant on January 14, 1998, plaintiff on January 30, 1998, and defendant's responses on February 11, 1998. These drafts are not to be submitted to the Court; only the final proposed pretrial order is to be submitted to the Court (the original to be filed in the Clerk's Office, with courtesy copies to my chambers and Judge Kaplan's chambers). The case will be considered trial ready, on 24–hours' notice, as of February 23, 1998. The deadlines herein for preparation and submission of the pretrial order remain applicable even if either party files objections to this Report and Recommendation.