**VIRGIN ENTERPRISES LIMITED, Plaintiff,**

v.

**VIRGIN CUTS, INC., Defendant.**

**No. CIVA 2:99CV1147.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 18, 2000.

---

Kristin Deming Wheeler, Pennie & Edmonds, Washington, DC, Stephen Edward Noona, Kaufman & Canoles, PC, Norfolk, VA, James W. Dabney, Pennie & Edmonds, LLP, Joyce M. Ferraro, Caroline R. Clark, Pennie & Edmonds LLP, New York City, for plaintiff.

William A. Lascara, Pender & Coward, P.C., Virginia Beach, VA, for defendant.

## *OPINION AND ORDER*

FRIEDMAN, District Judge.

This matter is before the Court for review of Magistrate Judge Tommy E. Miller's Report and Recommendation ("R & R") dated November 24, 1999. Defendant objects to the following findings by the Magistrate Judge: 1) the denial of defendant's request for a continuance of the proceedings to allow Perry Kiriakos to consult with independent criminal counsel; 2) the grant of plaintiff's objection to the admission of nine (9) of defendant's exhibits intended to be introduced through Mr. Kiriakos during his testimony; 3) several of the findings of fact; and 4) the conclusion of law that defendant failed to meet the second prong of the test established to determine whether a "case or controversy" exists in a Declaratory Judgment action involving a trademark dispute.

### *Factual and Procedural Background*

Plaintiff discovered that defendant had filed a U.S. Application with the Patent and Trademark Office to register the mark "VIRGIN CUTS & Design" for hair care products and salon services. *See* U.S. Ap-

plication Serial No. 75/566,056, Exhibit 1 to Declaration of Caroline R. Clark, attached to Plaintiff's Memorandum in Opposition to Motion to Dismiss or Transfer Venue ("Clark Declaration"). The Application stated that "at least as early as April 1, 1997," defendant made "use in commerce" of the designation "VIRGIN CUTS and design" as the term is defined in the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1052 et. seq.[1] In response to this Application, plaintiff sent two cease and desist letters to defendant. *See* Exhibits 2 and 3 to the Clark Declaration. The first letter was sent on January 12, 1999, and the second letter was sent on February 3, 1999. Defendant failed to respond to either letter.

On March 26, 1999, plaintiff filed a Complaint alleging that defendant is liable to plaintiff for trademark infringement under sections 32, 34, 35, and 43(a) of the Lanham Act; for dilution under section 43(c) of the Lanham Act; for unfair business practices under the Virginia Consumer Protection Act; for infringement of plaintiff's exclusive rights in and to the VIRGIN trademark and VIRGIN trade name under Virginia common law; and for unfair competition under Virginia common law. On September 2, 1999, defendant filed a Motion for Leave to File a Counterclaim for Declaratory Judgment. Plaintiff filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on September 13, 1999.[2] On October 15, 1999, defendant filed two Motions to Compel, and on October 26, 1999, plaintiff filed a Cross Motion for Protective Order.

A hearing was held on November 16, 1999 before the Magistrate Judge on the Motion for Leave to File Counterclaim for Declaratory Judgment, the Motion to Dismiss for Lack of Subject Matter Jurisdiction, the two Motions to Compel, and the Cross Motion for Protective Order. On November 17, 1999, the Magistrate Judge ordered all discovery stayed pending a ruling on the Motion for Leave to File Counterclaim for Declaratory Judgment and the Motion to Dismiss for Lack of Subject Matter Jurisdiction, and stated that the Motions to Compel and the Cross Motion for Protective Order can be rescheduled for hearing when and if discovery is resumed.

On November 24, 1999, the Magistrate Judge issued a Report and Recommendation denying defendant's motion for leave to file a Counterclaim for Declaratory Judgment and granting plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction. On December 7, 1999, defendant filed objections to the Report and Recommendation. On December 22, 1999, an Order was entered extending the time for defendant through December 28, 1999, to file a supplement to its objections to the Report and Recommendation. On December 28, 1999, defendant filed a supplement to its objections to the Report and Recommendation. For the reasons set forth below, the Court **ACCEPTS** the Magistrate Judge's Report and Recommendation.

### Standard of Review

With regard to pretrial matters not dispositive of a claim or defense of a party,

---

**1.** The Lanham Act defines the term "use in commerce" as:

the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce (1) on goods when (A) it is placed in any manner on the goods or

their containers ..., and (B) the goods are sold or transported in commerce.
15 U.S.C. § 1127.

**2.** Even though plaintiff filed suit alleging trademark infringement against defendant, plaintiff now wants the case dismissed based on lack of subject matter jurisdiction.

the district judge shall consider objections and modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. Fed. R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Fourth Circuit Court of Appeals has defined the "clearly erroneous" standard of review as follows: "Under [the 'clearly erroneous'] standard, findings of fact will be affirmed unless ... review of the entire record leaves ... the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir.1985).

With regard to dispositive matters, the district judge shall make a de novo determination of those portions of the Magistrate Judge's Report and Recommendation to which objections are made. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). In addition, the District Court is authorized to accept, reject or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). The District Court may receive additional evidence or recommit the matter to the Magistrate Judge with instructions. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C).

### Analysis

*I. Mr. Kiriakos's December 7, 1999 Declaration*

■■■ Defendant requests that the Court accept for consideration those facts set forth in Mr. Kiriakos's December 7, 1999 declaration, and the nine (9) exhibits attached thereto, or, in the alternative, that the Court conduct further evidentiary hearings to afford defendant the opportunity to present relevant jurisdictional facts. "Where a court conducts a de novo review, the district court should re-examine all relevant evidence previously reviewed by the magistrate judge to determine whether any particular findings of fact raised in the

objections are supported by substantial evidence." *Halloway v. Bashara*, 176 F.R.D. 207, 209 (E.D.Va.1997). While the district court "may also receive further evidence," which was not before the Magistrate Judge, *see* 28 U.S.C. § 636(b)(1), it may decline to do so, and attempts to raise new evidence on appeal are disfavored, as observed by the court in *Callas v. Trane CAC, Inc.*, 776 F.Supp. 1117 (W.D.Va. 1990), *aff'd*, 940 F.2d 651 (4th Cir.1991). In *Callas*, the court stated that "a party may not 'hold back' in the proceeding before the magistrate, hoping to submit additional affidavits or exhibits to the district judge in objection to the magistrate's determination." *Id.* at 1119. The court in *Callas* did not consider the new evidence, noting that "the defendants could have, and should have, offered this evidence much sooner." *Id.* The court in *Morris v. Amalgamated Lithographers of America*, 994 F.Supp. 161 (S.D.N.Y.1998), explained the rationale behind a district judge's decision not to consider additional evidence:

> While there may be cases in which the receipt of further evidence is appropriate, there are substantial reasons for declining to do so as a general matter. First, permitting such piecemeal presentation of evidence is exceptionally wasteful of time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record. Second, opposing parties would be put to the burden of proceedings which, to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the

district judge only if they fail to prevail before the magistrate judge on a more abbreviated showing. Finally, the routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.

*Id.* at 163.

■ For the reasons so aptly stated by the court in *Morris,* the Court will not consider either Mr. Kiriakos's December 7, 1999 declaration or the nine exhibits attached there to in reviewing the Magistrate Judge's Report and Recommendation. A further evidentiary hearing is likewise unnecessary in this case. Between September 2, 1999, when defendant filed a Motion for Leave to File a Counterclaim for Declaratory Judgment, and the hearing on November 16, 1999, defendant had ample time to submit evidence purportedly establishing the existence of a case or controversy. Defendant filed five written submissions with the Court during this time, including a declaration of Mr. Kiriakos, dated September 17, 1999.[3] The Court, therefore, will rely on the evidence before the Magistrate Judge as well as the record of the hearing itself.

## II. *Denial of a Continuance and Admission of Exhibits*

■ The Magistrate Judge denied defendant's request for a continuance to enable Mr. Kiriakos to consult with independent criminal counsel. The Magistrate Judge further granted plaintiff's objection to nine (9) of defendant's exhibits intended to be introduced by Mr. Kiriakos through his testimony. Before the Magistrate Judge heard any evidence, he inquired whether Mr. Kiriakos had filed the trademark application with the U.S. Patent and

Trademark Office under oath and stated as follows:

> Should I advise him of his rights before he takes the stand today? Because between his application [at] the Trademark Office and his declaration that's in the file, it seems to be a material difference ... Should he have criminal counsel appointed for him? Under the federal law, if you say something under oath at one place and say it differently in another place ... The application said that he was actually pursuing in commerce this trademark. And, apparently, from what I can tell from the pleadings ... that neither at that time nor this time are these marks actually being used in commerce.
>
> \*  \*  \*  \*  \*  \*
>
> I'm not threatening you. I'm just very concerned that the application says he's actually—these goods—these goods have been placed in commerce or words to that effect that were in the trademark application when, if the evidence I see in this file is correct, that was an out-and-out falsehood under penalty of perjury; and that's a five-year felony ...

Transcript of Proceedings November 16, 1999 ("Hearing Transcript"), at 3–4.

Shortly thereafter, defendant, through counsel, requested a brief continuance to allow Mr. Kiriakos to consult with independent criminal counsel. *Id.* at 4–5. The Magistrate Judge asked defense counsel:

> If I give you a continuance, what evidence would you present—be able to present either through Mr. Kiriakos or some other officer or director of the corporation to establish that this is a case or controversy? And now you've

**3.** The Court notes that the contents of Mr. Kiriakos's September 17, 1999 and his December 7, 1999 declarations are relatively similar.

read the cases, so tell me through proffer.

*Id.* at 11.

The Magistrate Judge denied defendant's motion for a continuance, as defense counsel indicated that no new evidence would be presented that would differ from Mr. Kiriakos's deposition testimony. *See id.* at 14. Following the denial of the continuance, Mr Kiriakos declined to testify, stating through defendant's counsel: "Your Honor, at this time I think we will not present testimony of Mr. Kiriakos although it would be our desire to present testimony if we were able to allow him to have an independent counsel advise him as to the criminal aspects raised by the court." *Id.* at 14–15. As Mr. Kiriakos did not testify, the Magistrate Judge denied the admission of nine (9) of defendant's exhibits intended to offered into evidence through Mr. Kiriakos's testimony.

The grant or denial of a motion for a continuance is a matter which lies within the sound discretion of the court. *See Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *United States v. Schembari,* 484 F.2d 931, 934 (4th Cir.1973). The Magistrate Judge's ruling will be set aside only if it appears he has abused his discretion. *See id.* This necessarily depends upon the facts and circumstances of the particular case. *See Ungar,* 376 U.S. at 590, 84 S.Ct. 841. Under circumstances, as here, where a continuance is requested for purposes of consulting with counsel, the Supreme Court has held that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar,* 376 U.S. at 589, 84 S.Ct. 841). Regardless of the limited circumstances in which the denial of such a continuance

would be considered an abuse of discretion, the Sixth Amendment right to effective assistance of counsel does not even apply to civil proceedings. *See Sanchez v. United States Postal Service,* 785 F.2d 1236, 1237 (5th Cir.1986).

With regard to the anticipation of a defendant or a witness committing perjury, the Supreme Court has further held that "the right to counsel includes no right to have a lawyer who will cooperate with planned perjury." *Nix v. Whiteside,* 475 U.S. 157, 173, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). During the hearing, the Magistrate Judge inquired as to what new "proof" defense counsel would offer if the continuance was granted that would differ from Mr. Kiriakos's deposition testimony taken less than one month previously. The following exchange occurred, demonstrating that Mr. Kiriakos would not testify to any different facts if a continuance was granted:

THE COURT: Has his testimony on page 30 and 31 changed at all, that the corporation has no financial records; no bank account; no employees; no checkbook; no telephone listing; never owned or leased any real property; never filed income tax returns; and in October, filed a sales tax return indicating no sales?

MR. LASCARA: That certainly has not changed, I don't believe—

THE COURT: None of these were changed?

MR. LASCARA: Well, Your Honor, the statement with regard to financial records, I believe, is—not that it wasn't actually accurate it was taken out of context. There have been expenditures going back to 1994 on behalf of Virgin Cuts.

THE COURT: By the corporation, not on behalf of the corporation, but by virtue of Virgin Cuts. That's the issue here,

not whether some stockholder of the corporation has had—had logos produced, had bought—purchased 40,000 to be put on car windows at Christmas in all the malls, whatever. Has Virgin Cuts actually spent any money including over—You work for them.

MR. LASCARA: Your Honor—

THE COURT: If they don't have a checkbook, how are you getting paid?

MR. LASCARA: Your Honor, I would suggest to you that they do not. They still do not. There is not a checkbook.

THE COURT: Then I deny your motion for a continuance, and we'll go on with the argument today.

Hearing Transcript, at 13–14.

As the Magistrate Judge was informed that Mr. Kiriakos would offer no testimony that differed from his deposition, the Magistrate Judge did not abuse his discretion in denying the motion for a continuance. The substance of Mr. Kiriakos's testimony would not had been altered by his consultation with independent counsel, therefore, the grant or denial of a continuance would not have affected the Magistrate Judge's concern for the presentation of perjured testimony. The Magistrate Judge sufficiently warned Mr. Kiriakos of the consequences of offering perjured testimony, and Mr. Kiriakos was able to exercise the option of either offering the testimony or remaining silent and not taking the stand at all. At most, as a result of the denial of the motion for a continuance to consult with independent criminal counsel, Mr. Kiriakos was denied a right not recognized by this Court, namely, "the right to have the assistance of counsel in the presentation of false testimony." *Nix*, 475 U.S. at 174, 106 S.Ct. 988. The denial of the motion for a continuance was therefore not an abuse of discretion. The Court **ACCEPTS** the Magistrate Judge's rulings

with regard to the denial of the motion for a continuance.

Following the denial of the motion for a continuance, defense counsel proffered nine (9) exhibits intended to be introduced through Mr. Kiriakos during his testimony. Plaintiff objected to the exhibits for lack of foundation, and the Magistrate Judge sustained the objection on the grounds that defendant had laid no foundation for the documents. *See* Hearing Transcript, at 32–33. A Magistrate Judge's evidentiary ruling is reviewed for an abuse of discretion. *See Benedi v. McNeil–P.P.C, Inc.*, 66 F.3d 1378, 1383 (4th Cir.1995). Defendant chose not present the testimony of Mr. Kiriakos, and, as such, did not have a foundation for the nine exhibits. Therefore, the Magistrate Judge's ruling declining to receive the exhibits was not an abuse of discretion, and the Court **ACCEPTS** this ruling.

### III. Findings of Fact

Defendant objects to the Magistrate Judge's finding that defendant is a "shell corporation." *See* R & R, at 11. Defendant objects to this finding of fact on the basis that the Magistrate Judge did not have the benefit of hearing Mr. Kiriakos's testimony at the hearing or considering the nine (9) exhibits that were not accepted into evidence. Defendant relies on the contents of Mr. Kiriakos's December 7, 1999 declaration as the basis for the objection to the finding that defendant is a "shell corporation." The Court has already held that it will not consider Mr. Kiriakos's December 7, 1999 declaration in reviewing the Report and Recommendation and the objections thereto. As defendant has offered no argument in support of this objection aside from the reliance on Mr. Kiriakos's December 7, 1999 declaration, the Court **ACCEPTS** the Magistrate Judge's finding that the defendant is a

"shell corporation," as this finding was appropriate based on the facts before the Magistrate Judge.

Defendant objects to the Magistrate Judge's finding that none of the acts that Mr. Kiriakos undertook on behalf of the defendant, as its President, in preparation for the operation of the hair salon and delivery of its various hair care products and services are attributable to the defendant. *See* R & R, at 4, 11. The Magistrate Judge recognized that Mr. Kiriakos did the following preparation on behalf of the defendant: 1) develop a logo for defendant; 2) hire a firm to design a plant for defendant; and 3) hire a writer who created a commercial for defendant and solicited some capital for this venture. *See id.* at 4. Mr. Kiriakos in his deposition stated that as defendant has no bank account, General Construction of Norfolk has paid for the above preparations. *See* Kiriakos Dep., at 45–46. None of these actions were taken by the defendant corporation, as it was incapable of making such preparations at its initial stages. Moreover, even assuming that the defendant had undertaken the above preparations, those steps would still fall short of what is required to establish a "case or controversy" in the absence of any actual use of a particular trademark, as the test was applied by the Magistrate Judge to the facts of the case. *See* R & R, at 7–10. The Court **ACCEPTS** the Magistrate Judge's finding that the marketing and logo design research discussed above was not conducted by the defendant.

*IV. Conclusions of Law*

■ Defendant objects to the Magistrate Judge's conclusion of law that the defendant has failed to meet the second prong of the test established to determine whether a "case or controversy" exists in a declaratory judgment action involving a trademark dispute, namely, that "the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant." *See* R & R, at 7. The defendant objects to the following statement of the Magistrate Judge in support of this conclusion: "The Complaint was filed based on a false representation by Virgin Cuts with the Patent and Trademark Office that since April 1, 1997, the mark 'VIRGIN CUTS & Design' had been in use in commerce." *See id.* at 11. Defendant asserts that it has sufficiently alleged that defendant "has committed" or "threatens to commit" trademark and trade name infringement, dilution, unfair trade practices and other torts.

Article III of the United States Constitution establishes the "case or controversy" requirement which limits federal jurisdiction to cases presenting "real and substantial" controversies involving "the legal relations of parties having adverse legal interests" and prohibits the exercise of jurisdiction over cases which are based upon "a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Courts apply a two-pronged test to determine whether a case or controversy exists in a declaratory judgment action involving a trademark dispute. *See Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985). "First, the declaratory plaintiff must have a real and reasonable apprehension of litigation. Second, the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant." *Windsurfing International, Inc. v. AMF, Inc.,* 828 F.2d 755, 757 (Fed.Cir.1987) (citations omitted). Further, the controversy must have existed at the time the pleading was filed. *Id.* The Magistrate Judge held that defen-

dant is unable to meet the second prong of the test requiring defendant to have either produced a product or service under the designation "VIRGIN CUTS & Design,"

> or have engaged in preparations for production such that but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production immediately.

*International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980).

While Mr. Kiriakos has a "hair salon and hair treatment concept," *see* Transcript of Proceedings September 3, 1999, at 20, this concept has not progressed to the point of creating a case or controversy. As of November 16, 1999, defendant did not own or lease a location in which to manufacture products or provide services under the designation "VIRGIN CUTS & Design." *See* Kiriakos Dep. at 30. Defendant had no employees, no bank account, and no financial records. *See id.* Defendant has never filed any income tax returns. *See id.* Defendant had no revenues in 1997, 1998, or 1999. *See id.* at 32–33. Defendant has no formulas for shampoos, no licenses for the ingredients of any hair care product, and has never offered goods or services for sale under any name. *See id.* at 34. Mr. Kiriakos has no previous experience in the hair salon or hair care products business. *See id.* at 49. He had no specimen product to offer, *see id.* at 158, and no price lists or labels for such a product. *See id.* at 165–66. No test marketing has been done for any of the potential products. *See id.* at 165–66. Mr. Kiriakos further stated that the labeling and descriptions of any product he might offer in the future were all subject to change. *See id.* at 161–62, 164–65.

Based on the facts of this case, as the defendant has not produced a product or provided a service bearing an accused trademark, and does not threaten to do so imminently, there can be no justiciable case or controversy regarding the nonexistent use. A mere "desire" to produce a product or provide a service bearing an accused trademark does not satisfy the second prong of the test requiring a legally adversarial conflict. *See Windsurfing,* 828 F.2d at 758. An actual case or controversy exists only where a party has engaged in a course of conduct demonstrating a "definite intent and apparent ability to commence use" of the trademark. *See Starter Corp. v. Converse, Inc.,* 84 F.3d 592, 595–96 (2d Cir.1996) (citing *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.,* 873 F.2d 985 (7th Cir.1989)). The "imminent intention and ability" test is applied in such a manner that "the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct or some assertion of the same." *Id.* at 596 (citing *Polaroid v. Berkey,* 425 F.Supp. 605 (D.Del.1976)).

Defendant in this case has not reached "the last point before the point of no return," and defendant has not demonstrated the existence of "more than a mere speculative interest in the validity and applicability of the [trademark]." *Heileman,* 873 F.2d at 990–91. As discussed in the Magistrate Judge's Report and Recommendation, the facts of this case are readily distinguishable from the facts in *Starter, Heileman,* and *Super Products Corp. v. D.P. Way Corp.,* 546 F.2d 748 (7th Cir. 1976). Defendant's objection to the Magistrate Judge's conclusion that no case or controversy exists is based on defendant's continued reliance on facts contained in Mr. Kiriakos's December 7, 1999 declaration. The Court has already held that it will not consider this declaration. Defendant is impermissibly asking this Court for

an advisory opinion. The Magistrate Judge correctly described the defendant as a "shell corporation" which has not taken sufficient steps to create a case or controversy, and defendant has presented no evidence of its ability to commence use of the trademark "VIRGIN CUTS & Design" in commerce in the near future. The Court **ACCEPTS** the Magistrate Judge's conclusion of law that no case or controversy exists, and plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction was properly granted.

*Conclusion*

For the reasons set forth above, it is this Court's **ORDER** that Magistrate Judge's November 24, 1999 Report and Recommendation is **ACCEPTED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel.

It is so **ORDERED**.