**CAPITAL ONE FINANCIAL CORPORATION,**
**Plaintiff,**

v.

**DRIVE FINANCIAL SERVICES, LP,**
**and Drive Trademark Holdings,**
**LP Defendants.**

No. CIV.A.1:06–279.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 12, 2006.

Monica R. Talley, Esqure, Mark Sommers, Esquire, Douglas Rettew, Esquire, Finnegan Henderson Farabow Garrett & Dunner, Washington, DC, for Plaintiff's Attorneys.

Eric Weisbatt, Esquire, Buchanan Ingersoll, Alexandria, Donald E. Goodwin, Esquire, Monte M. Bond, Esquire, Godwin, Pappas, Langley and Ronquillo, Dallas, TX, for Defense Attorneys.

### MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on Defendants Drive Financial Services, LP, and Drive Trademark Holdings, LP's (hereinafter collectively "Drive") Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue. This case is a Declaratory Judgment action where Plaintiff Capital One Financial Corporation (hereinafter "Capital One") asks the Court to declare that Capital One's use of the trademark "DriveOne" (1) does not constitute trademark infringement under the Lanham Act, (2) does not constitute trademark dilution under the Lanham Act, and (3) does not harm Drive. The issue before the Court is whether to grant Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer Venue where Plaintiff had expended considerable effort preparing its program for launch, where the program was available to a set of Plaintiff's customers at the time Plaintiff filed its Complaint, where the Court's declaratory judgment ruling will settle fully the parties' controversy, and where a substantial amount of the action giving rise to the controversy between the parties took place in the Eastern District of Virginia.

Plaintiff, over the course of several years, has developed a program for car dealers and buyers where participating consumers select a vehicle of interest and input their contact information which is sent to the nearest participating dealer. Pl.'s Opp. to Def.'s Mot. to Dismiss, or, in

the Alternative, Mot. to Transfer Venue at 1 (hereinafter "Pl.'s Opp."). The dealer then contacts the customer to schedule an appointment where the customer receives a pricing quote on his/her vehicle of interest. *Id.* After conducting focus groups and studies, Plaintiff decided to call its program "DriveOne" to leverage its Capital One trademark into the automobile industry. *Id.* at 1–2. Defendants, who provide financial services in the automobile industry, have used the mark "DRIVE ONE" in commerce since as early as February 20, 2006. *Id.* Upon learning of Plaintiff's intention to use the name "DriveOne" for its program, Defendants sent a cease-and-desist letter to Plaintiff on February 27, 2006, alleging that Drive owns, among others, the mark "DRIVEONE" and that Plaintiff's use of the mark DRIVEONE constituted actionable trademark and trade name infringement as well as actionable dilution of Defendants' mark. *Id.* at 2. Plaintiff subsequently filed this declaratory judgment action.

The Court denies Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue because Plaintiff expended considerable effort preparing its program for launch, Plaintiff's program was available to a set of Plaintiff's customers at the time Plaintiff filed its Complaint, the Court's declaratory judgment ruling will settle fully the parties' controversy, and a substantial percentage of the occurrences giving rise to the controversy between the parties took place in the Eastern District of Virginia.

## I. BACKGROUND

This case is a declaratory judgment action where Plaintiff seeks a declaration from the Court that (1) Plaintiff's use of the trademark DRIVEONE does not constitute trademark infringement or false designation of origin under the Lanham Act, (2) that Plaintiff's use of DRIVEONE does not constitute trademark dilution un-der the Lanham Act, and (3) that Drive has suffered no harm from Plaintiff's continued use of the mark.

*Origins of Plaintiff's "DriveOne" Program*

In December 2002, Plaintiff conceived the idea for an automobile sales program. Pl.'s Opp. at 4. The idea generally involved using Capital One's consumer network to provide referrals to automobile dealers, who would offer consumers "no hassle pricing." *Id.* Throughout 2003 and 2004, Capital One worked on developing the service by conducting two pilot programs, one with AutoNation, the largest automobile dealership group in the United States, and one with CarMax, the largest "used" automobile retailer in the United States. *Id.* Based on the positive results from these programs, Plaintiff studied ways to further develop the program by using an Internet automobile locator component, where consumers could choose a car before approaching a preferred dealer for a pricing quote. *Id.*

During 2005, Plaintiff continued efforts to establish a website that included an automobile locator component. *Id.* at 5. Capital One purchased an ownership interest in the California Internet Company for $9.1 million and signed a contract with the California Internet Company to provide the technology and website infrastructure for Plaintiff's program. *Id.* After signing this contract, several of Plaintiff's groups in McLean, Virginia began extensive work on developing and implementing the program. *Id.*

During the fourth quarter of 2005, Plaintiff's Brand Department conducted consumer research to define the nature of the program, to identify the core messages of the program, and to select the name for the program. *Id.* at 6. The Brand Department, along with another company, designed, conducted, and evaluated eight consumer focus groups to determine what

features of the preferred dealer program most interested consumers. *Id.* At the same time, the Brand Department designed and implemented two quantitative web-based surveys that studied consumer perceptions of the program. *Id.* Also around this time, the Brand Department performed a substantial amount of work on developing detailed marketing plans for the program, based in large part on the results of the focus groups and surveys. *Id.*

In October 2005, the Brand Department had the responsibility of selecting the name for Capital One's program and began working with a company called NameStormers on the project. *Id.* NameStormers generated over one hundred possible names and reported the pros and cons of each name. *Id.* at 7–8. In December 2005, Plaintiff selected several possible names for further examination from NameStormers' suggestions. Plaintiff reached a consensus that none of the suggested names created an adequate connection with the Capital One brand. In mid-December, Plaintiff selected the name "DriveOne" because of its inclusion of the term "One." *Id.* at 8. Plaintiff selected the word "Drive" to communicate that Capital One's program involves automobiles. *Id.* According to Plaintiff, at no time did any of the persons involved in the naming decision have any knowledge of Defendants' use of the name "DriveOne." *Id.*

*Plaintiff's Use of the DriveOne Name and Mark*

During the fourth quarter of 2005 and the first quarter of 2006, Plaintiff trained its sales personnel about the program, created various dealer sales material, and approached numerous potential dealer participants in Atlanta, Georgia, Indianapolis, Indiana, Los Angeles, California and Miami, Florida. *Id.* at 9. Plaintiff also conducted several focus groups and surveys to hone the consumer marketing message for the program. *Id.* As part of the dealer education and promotion process, Plaintiff showed dealers various marketing materials bearing the name DriveOne. *Id.*

From February 11–13, 2006, a large number of dealers were exposed to the name DriveOne at the National Automobile Dealers Association (hereinafter "NADA") trade show in Orlando, Florida. *Id.* at 9–10. At the convention, Plaintiff displayed a poster for its DriveOne program. *Id.* at 10. That poster contained a pocket filled with brochures bearing the DriveOne mark. *Id.* On February 10, 2006, Capital One launched a website for dealers containing information about the program. *Id.*

Also during early 2006, Plaintiff continued its efforts to launch its DriveOne program, including development of the electronic signature authentication system for the website, setting up a call center for the program, finalizing graphics for the website, and preparing form e-mails for customers who sign up for the program, and creating contracts for dealers. *Id.* In late February and early March, 2006, Plaintiff began preparing various advertising materials for the DriveOne program for use after the program began. *Id.*

On February 27, 2006, Drive sent Plaintiff a cease-and-desist letter alleging that Drive owns the marks "Drive," "Drive Financial Services," "Drive D Design," and "DriveOne" and that Plaintiff's use of the mark constituted violations of trademark law. *Id.* at 11. The letter demanded that Plaintiff cease and desist from all uses of "DriveOne" or any similar marks and threatened to take formal legal action if Plaintiff did not comply. *Id.* From the inception of Plaintiff's program in December 2002 until the present, Plaintiff has spent approximately $3 million on the program through salaries, commissions, and payments to vendors, not including the

$9.1 million that Plaintiff invested in the California Internet Company. *Id.* at 12.

*Plaintiff's Connection to McLean, Virginia*

During all phases of the development and implementation of Plaintiff's DriveOne program, the program involved various departments at Plaintiff's headquarters in McLean. *Id.* In selecting "DriveOne," five individuals from the Brand Department and one contract employee devoted substantial time working on the program. *Id.* The Department's activities account for a large portion of the total money Plaintiff spent on the program. *Id.* Most of the individuals central to program development, marketing, and naming issues are located in McLean, while the other brand team members and documents are located in Richmond, Virginia. *Id.*

Additionally, individuals in other departments in Richmond and McLean worked on various non-branding related aspects of the program. *Id.* Documents that cover business plans, corporate compliance, and contract negotiation are likewise located in this District. *Id.*

*Defendant's Organization*

Drive provides consumer financial services specializing in automobile financing for individuals with limited or below-average credit histories. Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, or, in the Alternative, Mot. to Transfer Venue at 2 (hereinafter "Def.'s Br."). In 1999, Defendants first began using the mark "Drive" in commerce to designate its financial services for the car purchasing public and car dealers. *Id.* Defendants filed for and received a number of federal trademark registrations, including for "Drive" on November 6, 2001, "Drive Financial Services" on December 4, 2001, and "D Design" on November 6, 2001. *Id.* at 3. Drive purposely built its business on the core mark "Drive" in an effort to facilitate the recognition of its services with its name. *Id.*

Drive began developing a program called "Drive One Complete Solution" in the fall of 2005. *Id.* On November 9, 2005, Drive submitted its application for the mark "One Complete Solution" for financial services. *Id.* The "Drive One Complete Solution" program has three service levels, designated by the marks "DriveOne," "DriveComplete," and "DriveSolutions." *Id.* Defendants submitted applications for the marks of each of these levels to the United States Patent and Trademark Office (hereinafter "USPTO") on February 15, 2006 and/or February 24, 2006. *Id.* Drive uses the mark "DriveOne" in commerce today and has done so since at least as early as February 20, 2006. *Id.*

## II. DISCUSSION

### A. Standard of Review

*Rule 12(b)(1) Motion to Dismiss*

■ Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the Court lacks jurisdiction over the subject matter of the action. A motion to dismiss for lack of subject matter jurisdiction questions the Court's "power to act." *Nelson v. USPS*, 189 F.Supp.2d 450, 454 (W.D.Va.2002). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction, and when the Defendant challenges the Court's subject matter jurisdiction, as is the case here, then " 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.' " *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991)). A court should only grant a 12(b)(1) motion to dismiss " 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.' " *Nelson*, 189

F.Supp.2d at 454 (quoting *Richmond, Fredericksburg & Potomac R. Co.,* 945 F.2d at 768). A dismissal of a complaint under Rule 12(b)(1) has no res judicata effect. See *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995).

*Motion to Transfer Venue*

■ This Court has the authority to transfer venue under 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2004). The Court must first determine whether the civil action might have been brought in the proposed venue. *See Brown Mfg. Corp. v. Alpha Lawn & Garden Equip.,* 219 F.Supp.2d 705, 709 (E.D.Va.2002)(referring to this determination as a "threshold matter"). Next, the Court must consider plaintiff's choice of venue, convenience of the parties and witnesses, and the "interests of justice." *GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 518–19 (E.D.Va.1999). The "interest of justice" factors include circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment." *Id.* (internal quotations and citations omitted).

**B. Analysis**

**1. A Case or Controversy Exists for the Purposes of Declaratory Judgment Jurisdiction**

■ The Court finds that a case or controversy exists for Plaintiff's declaratory judgment action. To establish declaratory judgment jurisdiction, a plaintiff must show that (1) it has a real and reasonable apprehension of litigation, and (2) it has engaged in a course of conduct which brought it into conflict with the declaratory defendant. *See Windsurfing Int'l Inc. v. AMF, Inc.,* 828 F.2d 755, 757 (Fed.Cir. 1987); *Virgin Enters. Ltd. v. Virgin Cuts, Inc.,* 149 F.Supp.2d 220, 227–28 (E.D.Va. 2000). Defendants concede that Plaintiff satisfies the first prong of this test. Thus, the question before the Court is whether Plaintiff has engaged in a course of conduct which brought it into conflict with the declaratory defendants, Drive.

**a. Plaintiff Had a "Definite Intent and Apparent Ability to Commence Use" of its Mark**

■ The Court finds that a case or controversy exists here because Plaintiff had a definite intent and apparent ability to commence use of its mark. A case and controversy exists in a trademark case where a party has engaged in a course of conduct demonstrating a "definite intent and apparent ability to commence use" of the trademark. *Virgin,* 149 F.Supp.2d at 227. "What is needed is evidence of a 'meaningful preparation' to use .... While the plaintiff need not engage in actual sales, it must demonstrate that it has taken the kind of tangible steps toward product launch that is normal in this industry." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:51 (4th ed.2004).

Here, at the time that Plaintiff filed its Complaint, it recently had launched the dealer portion of its DriveOne program. Plaintiff had planned, tested, developed, and negotiated the portions of this program over the course of a four-year period. Working with numerous outside vendors and experts, Plaintiff had developed the technology, infrastructure, and website for its program. After conducting focus groups, surveys, and naming studies, Plaintiff had selected a brand. These ef-

forts establish a "definite intent and apparent ability to commence use" of the DriveOne mark. *See, e.g., Virgin,* 149 F.Supp.2d at 227.

The cases that Defendants cite on this point are all distinguishable. In *Virgin,* the Court found that no case or controversy existed because the declaratory plaintiff had taken virtually no steps to bring its business concept into fruition. *See* 149 F.Supp.2d at 228. Specifically, that plaintiff had not purchased or leased a location in which to manufacture products or to provide services. *Id.* Additionally, the plaintiff had no employees, did not have a bank account, had no financial records, had never filed any income tax returns, and had no revenues in the three years preceding the suit. *Id.* Furthermore, the plaintiff had no formulas for its products, had never offered goods or services under any name, had no specimen product to offer, had no previous experience in the industry, had no price lists or labels for such a product, and had performed no test marketing for any of the potential products. Here, as noted above, Plaintiff took extensive steps to prepare its DriveOne brand for the marketplace. It performed research, engaged focus groups, and generally participated in large-scale efforts to launch its product and brand.

The declaratory plaintiff in *Windsurfing* had only a desire to use the mark at issue in the declaratory judgment action. *See* 828 F.2d at 758. That plaintiff had never used the term in question, and thus the parties' legal interests never had come into conflict. *See id.* Contrary to that factual situation, here, Plaintiff has used the term "DriveOne" in advertising and otherwise in commerce, thus bringing the parties' legal rights into conflict. In fact, it is contradictory that Defendants would send Plaintiff a cease-and-desist letter, claiming that Plaintiff's use of the "DriveOne" mark constitutes offenses actionable under the Lan-

ham Act, and then argue that such use does not implicate the parties' legal rights for purposes of jurisdiction.

Similarly, in *Planet Hollywood,* the court lacked jurisdiction because the declaratory plaintiff's plans for a casino had "fallen by the wayside." 80 F.Supp.2d 815, 874 (N.D.Ill.1999). Planet Hollywood not only did not know what it would call a casino, but it did not know whether it would build one at all. *Id.* One witness conceded that Planet Hollywood was not approved by any regulatory authority to open a casino and that Planet Hollywood had no plans to open a casino "on the drawing board." *Id.* Again, the facts here differ significantly. Plaintiff has detailed plans regarding its business strategies after having prepared extensive research. Plaintiff already has begun its association with numerous car dealers, one half of its business model. Soon, Plaintiff will establish ties with consumers, the second half of its business model.

In *Joint Stock Society v. VDV North America, Inc.,* the court held that no case or controversy existed because the plaintiff, a foreign vodka manufacturer, had *not* "taken *any* steps toward entering the U.S. market." 53 F.Supp.2d 692, 704 (D.Del. 1999) (emphasis in original). Specifically, the plaintiffs had no business or marketing plan concerning entry into the United States, they had not undertaken any advertising in the United States, they had not submitted a draft or mock advertising campaign, they had not conducted any consumer surveys, had not decided who would distribute the product, and had not obtained approval from any of the relevant government agencies. *Id.* Again, the facts here differ significantly. Plaintiff has undertaken significant research, has conducted consumer surveys, has intricate business plans about who will distribute the product, and generally has taken affirma-

tive steps toward entering the market with its mark. The Court holds that there is a valid case or controversy here because the Court finds ample evidence that Plaintiff demonstrated a definite intent and apparent ability to commence use of its mark.

### b. Plaintiff Has "Used" the DriveOne Mark for Infringement Purposes

The Court denies Defendant's Motion to Dismiss because Plaintiff has used the DriveOne mark for the purposes of a declaratory judgment action. The Court renders no judgment today about whether Plaintiff or Defendant has the right to the mark DriveOne and renders no opinion concerning infringement. The question here is whether there are sufficient facts in issue to demonstrate a "case or controversy" within the meaning of Article III. "The Lanham Act imposes liability for infringement of a registered mark upon *any person* who *uses* an infringing mark in interstate commerce *in connection with* the sale or advertising of goods or services." 4 *McCarthy* § 25:26 (emphasis in original). Courts in different circuits have split on the question of whether advertising alone constitutes use under the Lanham Act. *Compare Buti v. Perosa, S.R.L.,* 139 F.3d 98, 103, 104 (2d Cir.1998), *with Council for Better Business Bureaus, Inc. v. Bailey & Assoc. Inc.,* 197 F.Supp.2d 1197, 1213 (E.D.Mo.2002).

Without deciding the issue of infringement here, the Complaint alleges that Plaintiff advertised and used the disputed DriveOne mark in several ways. On January 20, 2006, Plaintiff displayed materials containing the DriveOne mark to a large, national automobile dealer. Second, Plaintiff displayed a poster for its DriveOne program at a booth at the NADA convention. The poster contained a pocket filled with brochures bearing the DriveOne mark for automobile dealers to take and to distribute. Third, on February 10, 2006, Plaintiff launched a version of its website that was available to dealers for approximately a month, although it was later taken down. Fourth, in late January 2006, Plaintiff visited with a number of dealers to discuss its DriveOne program, during which time Plaintiff showed the dealers the DriveOne brochure. To claim, as Defendants do, that such action does not constitute using the mark in commerce ignores the structure and goals of Plaintiff's planned program. Automobile dealers are an essential part of this program. Without a participating dealer near his/her home, a prospective consumer will not have the ability to use Plaintiff's proposed service. Without willing dealers, Plaintiff's program cannot and will not succeed. Thus, for purposes of this motion it appears that Plaintiff engaged in several steps to promote its program and mark to automobile dealers. This alleged conduct is sufficient to demonstrate an issue concerning whether Plaintiff has used the mark to infringe upon Defendants' contended claim to the mark.

Finally, Defendants' cease-and-desist letter and Defendants' filing of a lawsuit against Plaintiff in the United States District Court for the Northern District of Texas for trademark infringement are persuasive to the Court on this issue. Such actions undercut Defendants' argument that Plaintiff has not used the disputed mark sufficiently to infringe upon Defendants' rights. In fact, declaratory judgment seems quite appropriate in a situation such as this so that parties can adjudicate their disputes before either suffers great damage. *See Superguide Corp. v. Kegan,* 987 F.Supp. 481, 484–85 (W.D.N.C.1997). Therefore, the Court denies Defendants' Motion to Dismiss because Plaintiff has used the "DriveOne" mark sufficiently to state a claim for trademark infringement.

### 2. The Court's Declaratory Judgment Ruling Will Settle Fully the Parties' Case or Controversy

The Court denies Defendants' Motion to Dismiss because declaratory judgment will settle fully the parties' controversy. A federal district court normally should entertain an action requesting declaratory judgment when the declaratory relief sought would (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir.1998). District courts have great latitude in determining whether to grant or deny declaratory relief. *Id.*

Here, a controversy exists between only two parties, the litigants named in the declaratory judgment action. No third-party insurer or otherwise interested party is involved in this case, any related action, nor is another party waiting to be named elsewhere. *Cf. id.* at 420–21 (holding that declaratory judgment was inappropriate where, after exhausting administrative remedies, a contractor would have to bring separate actions against the state and other parties in state court). Neither party here needs to exhaust administrative remedies before proceeding with the action, and no question of state law is awaiting resolution before the Court can here this matter. Instead, the only issue for disposition is whether the use of Plaintiff's DriveOne trademark violates Defendants' trademark. The Court will resolve this matter entirely when it makes a ruling in Plaintiff's declaratory judgment action. The Court denies Defendants' Motion to Dismiss because the Court's ruling on Plaintiff's declaratory judgment action will resolve fully the issue of whether Plaintiff's DriveOne mark violates Defendants' trademark.

### 3. Defendants Have Not Met Their Burden of Establishing Why the Eastern District of Virginia Is an Inappropriate Venue

The Court denies Defendants' Motion to Transfer Venue because they have not established why the Eastern District of Virginia is an inappropriate venue. "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district of division where it might have been brought." 28 U.S.C. § 1404(a). When deciding whether or not to transfer venue, the courts will consider: (1) the plaintiff's choice of venue, which is entitled to substantial weight; (2) convenience of the parties and witnesses; and (3) the interests of justice, which encompasses all of the factors unrelated to witness and party convenience. *See, e.g., Brown Mfg. Corp. v. Alpha Lawn & Garden Equipment, Inc.*, 219 F.Supp.2d 705, 709 (E.D.Va.2002). In determining whether transferring venue is in "the interests of justice," courts analyze the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join parties, and the possibility of harassment. *Id.* The moving party bears the burden of demonstrating that a transfer of venue is warranted. *See, e.g., Samsung Electronics Co., Ltd. v. Rambus Inc.*, 386 F.Supp.2d 708, 715 (E.D.Va.2005). "Unless the balance of conveniences is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Furmanite America, Inc. v. Durango Assocs., Inc.*, 662 F.Supp. 348, 351 (E.D.Va.1986). The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the

degree of inconvenience. *Samsung,* 386 F.Supp.2d at 718.

Here, Plaintiff's selection of the Eastern District of Virginia is entitled to substantial weight, particularly when it is the plaintiff's home state, as it is for Capital One because its principal place of business is located in McLean, Virginia. Although Defendants claim that the " 'act' that caught the attention of [Drive] was in Orlando, Florida at the NADA convention and Exhibition, not in McLean, Virginia," Defendants cite to no case law requiring that a party discover the plaintiff's use of a mark in the plaintiff's home district for the plaintiff's choice of forum to be valid. Instead, there need only be a substantial connection between the plaintiff and its chosen forum as there is here because the plaintiff maintains its principal place of business in McLean, Virginia.

Furthermore, Plaintiff's McLean, Virginia office performed most of the development, analysis, review, and testing of the DriveOne program. Capital One employee Walter Blotkamp's declaration states he directed virtually all of the marketing and branding, including the selection of the DriveOne mark. This is especially pertinent because the principal issues in this case involve Plaintiff's selection and use of the DriveOne mark and whether the use of such mark infringes Defendants' rights. The bulk of the evidence on these issues, including documents and witnesses, are located in the Eastern District of Virginia. Defendants' conclusory statement that "the Northern District of Texas is more convenient" for Defendants is insufficient for the Court to transfer venue. Lastly, the interests of justice favor resolving this issue in the Eastern District of Virginia.

Declaratory judgments are particularly useful in resolving trademark disputes so the parties may resolve controversies promptly where the alleged owner of a trademark threatens to sue for infringe-

ment. *See Superguide Corp. v. Kegan,* 987 F.Supp. 481, 484–85 (W.D.N.C.1997). If Plaintiff wishes to avail itself of this Court's speedy docket so as to resolve promptly the threat of litigation and possible damages, it may do so, particularly in consideration of its substantial ties to this District. Thus, the Court denies Defendants' Motion to Transfer Venue because Defendants have not met their burden for establishing that the Eastern District of Virginia is an inconvenient forum.

## III. CONCLUSION

The Court denies Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue because Plaintiff expended considerable effort preparing its program for launch, Plaintiff's program was available to a set of Plaintiff's customers at the time Plaintiff filed its Complaint, the Court's declaratory judgment ruling will settle fully the parties' controversy, and a substantial portion of the occurrences giving rise to the controversy between the parties took place in the Eastern District of Virginia.

Accordingly, it is hereby

ORDERED that Defendants Drive Financial Services, LP and Drive Trademark Holdings, LP's Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.